## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MOISES AGUILAR, JR., et al., | § § | Civil Action No. <u>3:17-CV-01165-B</u> |
| Plaintiffs, | § § | |
| v. | § § | **BRIEF IN OPPOSITION TO** |
| | § | **DEFENDANT'S MOTION TO DISMISS** |
| OCWEN LOAN SERVICING, LLC, | § § | |
| Defendant. | § § | |
| | § | |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF THE FACTS ...............................................................................2

LEGAL STANDARD ...............................................................................................3

ARGUMENT .............................................................................................................4

I.     Plaintiffs' Claims are not Limited by the Statute of Limitations........4

     A.    *American Pipe Tolling Applies to Plaintiffs' TCPA Claims*.......... 5

     B.    *Tolling Applies to All of Plaintiffs' State Law Claims* ................10

II.    Plaintiffs Adequate State Plausible Claims...........................................14

     A.    *Plaintiffs Adequate Plead Claims Under Negligence* .....................14

          i.    *Plaintiffs properly allege Defendant owed Plaintiffs a duty of care*........................................................................14

          ii.   *Plaintiffs properly allege damages to support negligence claims* ................................................................................17

     B.    *Plaintiffs Adequately Plead Violations of the TDCA* ...................19

     C.    *Plaintiffs Adequately Plead Claims of Unreasonable Collection Efforts* ...........................................................................................21

          i.    *Plaintiffs plead the requisite conduct for a claim of unreasonable collection efforts*............................................21

          ii.   *Plaintiffs properly allege damages to support unreasonable collection efforts claims* ...............................22

     D.    *Plaintiffs Hickman and Villalobos's TCPA Claims do not Fail* ...................................................................................24

CONCLUSION .......................................................................................................25

## TABLE OF AUTHORITIES

*Al-Kidd v. Ashcroft*,

    580 F.3d 949 (9th Cir. 2009) ................................................................3

*All Am. Life & Cas. Ins. Co. v. Vandeventer*,

    No. 02-05-00016, 2006 WL 742452, (Tex. App.–Fort Worth Mar. 23, 2006) ..12

*American Pipe & Construction Co. v. Utah*,

    414 U.S. 538 (1974) ...................................................................*passim*

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) ............................................................................3

*Asplundh Tree Expert Co. v. Abshire*,

    517 S.W.3d 320 (Tex. App.–Austin 2017) ....................................12, 13

*Baker v. Putnal*,

    75 F.3d 190 (5th Cir.1996) ..................................................................3

*Bara v. Major Funding Corp. Liquidating Trust*,

    876 S.W.2d 469, 471–73 (Tex. App.–Austin 1994) ..........................12

*Bell v. Showa Denko K.K.*,

    899 S.W.2d 749 (Tex. App.–Amarillo 1995)....................................12

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ..................................................................3, 17, 19

*Bentley v. Bunton*,

　　94 S.W.3d 561 (Tex. 2002)...........................................................................18, 19

*Braden v. Wal-Mart Stores, Inc.*,

　　588 F.3d 585 (8th Cir. 2009) ................................................................................3

*Bray v. Cadle Co.*,

　　2010 WL 4053794 (S.D. Tex. Oct.14, 2010).....................................................23

*City of Tyler v. Likes*,

　　962 S.W.2d 489 (Tex. 1997) ................................................................................3

*Clark v. ConocoPhillips Co.*,

　　465 S.W.3d 720 (Tex. App.–Houston [1st Dist.] 2015, no pet.)..................12, 13

*Clark v. Deutsche Bank Nat. Trust Co*.,

　　No. 3:14–CV–3590–B, 2015 WL 4093948  (N.D. Tex. Jul. 7, 2015)............13-14

*Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*,

　　No. EP-11-CV-166-KC, 2011 WL 5976918  (W.D. Tex. Nov. 29, 2011)............17

*Colo. Capital v. Owens*,

　　227 F.R.D. 181 (E.D.N.Y. 2005) .......................................................................14

*Cowles v. Bank W.*,

　　719 N.W.2d 94 (Mich. 2006)..............................................................................11

*Credit Plan Corp. of Houston v. Gentry*,

　　516 S.W.2d 471  (Tex. Civ. App. 1974)..............................................................21

*Crown, Cork & Seal Co., Inc. v. Parker,*

  462 U.S. 345 (1983) ....................................................................5, 10

*Cullen v. Margiotta,*

  811 F.2d 698 (2d Cir. 1987) ................................................................10

*Davidson v. Lee,*

  139 S.W. 904, 907 (Tex. App.-Galveston 1911, writ denied) ...........................23

*EMC Mortg. Corp. v. Jones,*

  252 S.W.3d 857 (Tex. App. 2008) ........................................................21

*Enis v. Bank of Am., N.A.,*

  No. 3:12-CV-0295-D, 2012 WL 4741073 (N.D. Tex. Oct. 3, 2012) ...........23, 24

*Fausto v. Credigy Servs. Corp.,*

  598 F. Supp. 2d 1049 (N.D. Cal. 2009) ....................................................15

*Flagg v. Stryker Corp.,*

  647 F. App'x 314 (5th Cir. 2016) ......................................................4, 22

*Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,*

  960 S.W.2d 41 (Tex. 1998) ................................................................17

*Grant v. Austin Bridge Constr. Co.,*

  725 S.W.2d 366 (Tex. App.–Houston 1987) ...............................................12

*Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins,*

  926 S.W.2d 287  (Tex. 1996) ..............................................................16

*Hatfield v. Halifax PLC,*

    564 F.3d 1177, 1188 (9th Cir. 2009) ...................................................................5

*Hatton v. Bank of Am., Nat'l Ass'n,*

    No. 1:15-cv-00187, 2015 U.S. Dist. LEXIS 89448 (E.D. Cal. July 8, 2015) ...15

*Hayes v. U.S.,*

    899 F.2d 438 (5th Cir. 1990) .............................................................................14

*Hurd v. BAC Home Loans Servicing, LP,*

    880 F. Supp. 2d 747 (N.D. Tex. 2012) ..................................................15, 16, 18

*In re BP p.l.c. Sec. Litig.,*

    No. 4:13-CV-1393, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014) ...............6, 8

*In re Enron Corp. Sec., Deriv., & "ERISA" Litig.,*

    465 F.Supp.2d 687 (S.D. Tex. 2006) ...................................................................8

*In re Hanford Nuclear Reservation Litig.,*

    534 F.3d 986 (9th Cir. 2008)................................................................................6

*In re Katrina Canal Breaches Consol. Litig.,*

    2008 WL 2692674 (E.D. La. July 2, 2008)..........................................................7

*In re: Marcos F. Lopez,*

    Adv. No. 13-07019, 2015 WL 1207012  (S.D. Tex. Bankr. Mar. 12, 2015) ........14

*In re Processed Egg Prods. Antitrust Litig.,*

    2012 U.S. Dist. LEXIS 180513, 2012 WL 6645533 (E.D. Pa. Dec. 20, 2012) .....7

*In re S. Scrap Material Co., LLC*,

541 F.3d 584 (5th Cir. 2008) ..............................................................3

*In re WorldCom Sec. Litig.*,

496 F.3d 245 (2d Cir. 2007)................................................................6

*Justice v. Town of Cicero*,

577 F.3d 768 (7th Cir. 2009) ..............................................................3

*Koch Oil Co. v. Wilber*,

895 S.W.2d 854, 863 (Tex. App.–Beaumont 1995)..........................12

*Lamar Homes, Inc. v. Mid–Continent Cas. Co.*,

242 S.W.3d 1 (Tex. 2007)..................................................................17

*Lehman v. United Parcel Serv., Inc.*,

443 F. Supp. 2d 1146 (W.D. Mo. 2006)...............................................7

*Lowe v. Surpas Res. Corp.*,

253 F. Supp. 2d 1209 (D. Kan. 2003)................................................15

*McCaig v. Wells Fargo Bank (Texas), N.A.*,

788 F.3d 463 (5th Cir. 2015)........................................18, 19, 20, 21

*McDonald v. Bennett*,

674 F.2d 1080 (5th Cir. 1982)...........................................................23

*Mason v. Long Beach Mortg. Co.*,

2008 U.S. Dist. LEXIS 94250, 2008 WL 4951228 (N.D. Ill. Nov. 18, 2008) ....7

*Mayfield v. San Jacinto Sav. Ass'n*,

    788 S.W.2d 119, 121 (Tex. App.–Houston 1990)..............................................12

*Parkway Co. v. Woodruff*,

    901 S.W.2d 434 (Tex. 1995)..............................................................................19

*Phuwadol Thamathitikhun v. Bank of Am., N.A.*,

    No. 6:15-CV-390, 2016 WL 1077822 (E.D. Tex. Mar. 18, 2016)...............15-16

*Rawr v. Grant Thornton LLP*,

    142 F. Supp. 2d 793 (N.D. Tex. 2000)..................................................................8

*Sanchez v. Client Services, Inc.*,

    520 F. Supp. 2d 1149 (N.D. Cal. 2007)...............................................................15

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,

    642 F.3d 560 (7th Cir. 2011)..................................................................................5

*Sharyland Water Supply Corp. v. City of Alton*,

    354 S.W.3d 407 (Tex. 2011).........................................................................17-18

*Snyder v. Ocwen Loan Servicing, LLC*,

    Case No. 1:14-cv-08461 (N.D. Ill.)...........................................................*passim*

*Stanley Indus. of S. Fla. v. J.C. Penney, Corp.*, Inc.,

    2006 WL 2432309 (N.D. Tex. Aug. 18, 2006)....................................................17

*State Farm Mut. Auto. Ins. Co. v. Boellstorff*,

    540 F.3d 1223 (10th Cir. 2008)..............................................................................*6*

*Sw. Bell. Tel. Co. v. DeLanney*,

    809 S.W.2d 493, 494–95 (Tex. 1991) ................................................................17

*Tosti v. Los Angeles*,

    754 F.2d 1485 (9th Cir. 1985).............................................................................10

*Tourgeman v. Collins Fin. Servs.*,

    2010 U.S. Dist. LEXIS 123683, 2010 WL 4817990 (S.D. Cal. Nov. 22, 2010)..15

*Ventura v. Banales*,

    905 S.W.2d 423 (Tex. App.–Corpus Christi 1995)...........................................12

*Vila v. Inter-Am. Inv. Corp.*,

    570 F.3d 274 (D.C. Cir. 2009) .............................................................................3

*Vine Street LLC v. Keeling*,

    361 F. Supp. 2d 600 (E.D. Tex. 2005) ...............................................................13

*Walker v. Polyscience Corp.*,

    No. 14-89-00678, 1990 WL 79838 (Tex. App.–Houston June 14, 1990) .........12

*Wyser-Pratte Mgmt. Co. v. Texlon Corp.*,

    413 F.3d 553 (6th Cir. 2005) ..........................................................................8, 9

## TABLE OF STATUTES AND RULES

Fed. R. Civ. P. 8(a)(2) ................................................................3

Fed. R. Civ. P. 12(b)(6) ..............................................................3

Tex. Civ. Prac. & Rem. § 16.003 ...............................................14

Tex. Fin. Code Ann. § 392.302 (West 2017) .............................20

27 U.S. § 227(b)(1)(A)(iii) .........................................................24

27 U.S. § 227(b)(1)(B) ...............................................................24

Moises Aguilar, Jr., and all other Plaintiffs in this consolidated action ("Plaintiffs"), respectfully submit this Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaints, which was filed on August 2, 2017. [Doc. No. 22].

## INTRODUCTION

Plaintiffs initiated their actions between May 3-8, 2017 by filing Complaints alleging claims of: negligent and intentional violations of the Telephone Consumer Protection Act ("TCPA"), common law negligence and negligence *per se*, Texas Debt Collection Practices Act ("TDCA"), the Texas Deceptive Trade Practices Act ("DTPA"), and the common law tort of unreasonable collection efforts. [*See, e.g.*, Doc. No. 1; Compl. ¶¶ 52-92].[1] Plaintiffs subsequently amended their Complaints, removing a defendant and a cause of action under the DTPA. [*See, e.g.*, Doc. No. 14; Am. Compl.]. Collectively, as alleged in the Amended Complaints, Defendant made over 32,583 calls to Plaintiffs at frequent and unreasonable times with all Plaintiffs noting that they received additional calls after the time periods in which the 32,583 calls were received as noted in the Complaints.[2] Regardless of whether or not consent to be called even existed in the first place, Plaintiffs made multiple requests for the calls to stop. [Doc. No. 14, ¶ 31]. Despite Plaintiffs' pleas to stop the calls and harassment,

---

[1] For the purposes of this Opposition to Defendant's Motion to Dismiss, Plaintiffs cite to the lead Complaint and Amended Complaint of Moises Aguilar, Jr. in the Consolidated Cases for reference to factual and legal allegations common to all of Plaintiffs' Amended Complaints.

[2] [*See, e.g.,* Doc. No. 14; Am. Compl., ¶ 29]; *see also* Case Nos. 3:17-cv-1166-B, 3:17-cv-1167-B, 3:17-cv-1168-B, 3:17-cv-1169-B, 3:17-cv-1181-B, 3:17-cv-1182-B, 3:17-cv-1183-B, 3:17-cv-1184-B, 10. 3:17-cv-1185-B, 3:17-cv-1186-B, 3:17-cv-1200-B, 3:17-cv-1201-B, 3:17-cv-1202-B, 3:17-cv-1210-B, 3:17-cv-1211-B, 3:17-cv-1212-B, 3:17-cv-1213-B, 3:17-cv-1214-B, 3:17-cv-1232-B, 3:17-cv-1233-B, 3:17-cv- 1234-B, 3:17-cv-1235-B, 3:17-cv-1236-B, 3:17-cv-1237-B. Plaintiffs cite the docket number of the Lead Amended Complaint for consistency through this Opposition.

Defendant continued to call Plaintiffs relentlessly. [*See, e.g.*, Doc. No. 14, ¶¶ 31-36].

Defendant now seeks to dismiss Plaintiffs' claims based upon alleged deficiencies in Plaintiffs' First Amended Complaints and limit claims based upon the statute of limitations. *See* Def.'s Mem. Defendant's motion should be denied in its entirety because Plaintiffs have properly alleged facts to give rise to their claims. Importantly, Plaintiffs allege injuries that were incurred within the TCPA's four year statute of limitations and the two year statute of limitations for Plaintiffs' state law causes of action. Nonetheless, Plaintiffs have alleged facts sufficiently similar to a pending class action to warrant tolling based on the *American Pipe* doctrine. As such, Defendant's Motion to Dismiss should be denied.

<u>STATEMENT OF THE FACTS</u>

From March of 2011 through December of 2015, Defendant placed *over 32,583 calls* to Plaintiffs in an abusive effort to collect a debt. [*See, e.g.,* Doc. No. 14, ¶¶ 24, 29]. Calls continued even beyond December 2015 despite Plaintiffs' efforts to revoke any consent to be called. [*See, e.g.*, Doc. No. 14, ¶¶ 25, 31-36]. The calls were unrelenting, extremely intrusive, disruptive, and disturbing— causing significant emotional harm and distress to Plaintiffs. [*See, e.g.*, Doc. No. 14, ¶¶ 38-50]. The massive and absurd volume of calls and total lack of *any* semblance of decency in its collection efforts—coupled with Defendant's complete and utter disregard for Plaintiffs' pleas to stop being harassed—form the basis of Plaintiffs' claims under the TCPA and state law causes of action.

## LEGAL STANDARD

Plaintiffs must only present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim must only meet the low threshold of being plausible– not certain or even probable. *Twombly*, 550 U.S. at 556 (holding that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that recovery is very remote and unlikely.") (internal quotation marks omitted). A complaint states a plausible claim for relief if the "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 643.

The Court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996)). Indeed, "*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. at 663; *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009); *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009)). "[W]e must remember that

the question at the motion to dismiss stage is not whether [Plaintiff] has *proven* the elements to succeed . . . or even whether he has made 'detailed factual allegations[;]' . . . [t]he question is whether [Plaintff] has plausibly alleged enough information that, *with discovery*, he could prove [] Defendants are liable." *Flagg v. Stryker Corp.*, 647 F. App'x 314, 319 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678) (emphasis in original). "*Twombly* and *Iqbal* were designed to avoid subjecting defendants to lengthy and expensive discovery when the plaintiff is merely on a fishing expedition . . . . They are not a basis to shield [defendants] from liability." *Flagg*, 647 F. App'x at 318.

## ARGUMENT

### I.  Plaintiffs' Claims are not Limited by the Statute of Limitations

Plaintiffs filed their actions between May 3-8, 2017 alleging the Defendant called Plaintiffs collectively *at least 32,583* times between March 2011 and December, 2015. [*See, e.g.,* Doc. No. ¶¶ 24, 29]. Calls continued even after December 15, 2015. [*See, e.g.*, Doc. No. 14, ¶¶ 25, 31-36]. As described *infra*, given the pendency of a related class action filed in the Northern District of Illinois in 2014, Plaintiffs' claims are tolled, which allows Plaintiffs to reach back to 2010 for TCPA claims and 2012 for state law claims related to the calls made by Defendant to Plaintiffs. *See Snyder v. Ocwen Loan Servicing, LLC*, Case No. 1:14-cv-08461 (N.D. Ill.). Although, in the present Motion to Dismiss, Defendant simultaneously argues that Plaintiffs both waited too long to bring claims against

Defendant yet also did not wait long enough.[3] This is not only absurd, but contrary to the majority approach on tolling.

### A.  *American Pipe Tolling Applies to Plaintiffs' TCPA Claims*

The *American Pipe* tolling doctrine provides "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756 (1974). In applying this doctrine, it is irrelevant whether the member of the putative class intervenes in the original action or files an independent suit. *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 350, 103 S. Ct. 2392 (1983). As a result, "tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011). Notably, "courts have permitted individual plaintiffs to take advantage of the *American Pipe* tolling rule where the prior class action provided the defendant with sufficient notice of the claims made against it." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir. 2009).

Defendant's argument that tolling only applies to cases filed after a decision on class certification has been flatly rejected by multiple circuit courts. *See In re*

---

[3] *See* Def.'s Mem. pgs. 6, 16 (arguing on page 6 Plaintiffs waited too long to bring claims stemming from 2011, but also arguing on page 16 that Plaintiffs should have waited even longer—until after the class certification decision was made in the related class action—in order to toll claims from 2011).

*WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1235 (10th Cir. 2008). The Second Circuit reasoned that applying *American Pipe* tolling to plaintiffs who file individual suits *before* class certification is consistent with the purpose of the statute of limitations because defendants are already on notice of the claims due to the timely filed class action. *In re WorldCom Sec. Litig.*, 496 F.3d at 255. The Second Circuit concluded that "[t]he American Pipe tolling doctrine was created to protect class members from being *forced* to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually." *Id.* at 256."

Following the Second Circuit's reasoning, the Ninth Circuit noted that "although the *American Pipe* doctrine protects plaintiffs from being forced to file suit before the certification decision, that doesn't mean that plaintiffs who file before certification are not entitled to tolling. They have a right to file at the time of their choosing and denying tolling would diminish that right." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d at 1009 (citations omitted).

A majority of other courts across the country have followed suit. *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, No. 4:13-CV-1393, 2014 WL 4923749, at *3 (S.D. Tex. Sept. 30, 2014) (noting "[t]he Fifth Circuit has not spoken on this question of whether class members who file individual claims prior to a decision on class certification thereby forfeit tolling under *American Pipe*[,]" and holding "[t]he

Court joins this trend and adopts the persuasive reasoning set forth in *WorldCom* and the Tenth Circuit's *State Farm* decision."); *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 2692674, at *2–4 (E.D. La. July 2, 2008) (adopting the reasoning of *WorldCom* as "persuasive," and rejecting the alternative as "illogical"); *Lehman v. United Parcel Serv., Inc.*, 443 F. Supp. 2d 1146, 1151 (W.D. Mo. 2006) ("This Court finds no basis in either Supreme Court or Eighth Circuit precedent for ruling that the statute of limitations should not be tolled because [Plaintiff] chose to sue sooner than he had to."); *Mason v. Long Beach Mortg. Co.*, 2008 U.S. Dist. LEXIS 94250, *6, 2008 WL 4951228 (N.D. Ill. Nov. 18, 2008) ("while the Seventh Circuit has not decided this issue, this Court agrees with the Second, Tenth, and now Ninth Circuits by including as tolled the limitations period for the claims of putative class members who opt out of the class before a ruling on class certification."); *In re Processed Egg Prods. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 180513, *24, 2012 WL 6645533 (E.D. Pa. Dec. 20, 2012) ("After carefully reviewing the divergent circuit court opinions on this issue, the Court will apply the analysis of the Second, Ninth, and Tenth Circuit Courts of Appeals and hold that the Plaintiffs may claim the benefit of class action tolling.").

Despite the prevailing trend and case law to the contrary, Defendant reaches back and makes hay of a year 2000 case decided in this district that held *American Pipe* tolling does not apply to individuals who file separate suits prior to a decision on class certification. *See Rawr v. Grant Thornton LLP*, 142 F. Supp. 2d 793,

799-800 (N.D. Tex. 2000). Given the *Rawr* decision and Plaintiffs' request of this Court to take the majority approach instead, the Court may find helpful the decision on this issue in *In re BP p.l.c. Sec. Litig.* No. 4:13-CV-1393, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014). In that case, the Southern District of Texas also grappled with the issue of whether it should apply *American Pipe* tolling despite a prior Southern District of Texas decision finding that tolling should not apply. *Id.* at *2-4. The Southern District of Texas found that its prior position on *American Pipe* tolling it took in 2006—prior to the Second Circuit's *WorldCom* decision—was falling out of favor and becoming a minority approach, thus it must change course and join the trend of the majority of other courts. *In re BP p.l.c. Sec. Litig.* No. 4:13-CV-1393, 2014 WL 4923749 at *3; *see also In re Enron Corp. Sec., Deriv., & "ERISA" Litig.*, 465 F.Supp.2d 687 (S.D. Tex. 2006). Indeed, in holding that *American Pipe* tolling must be applied, the Southern District of Texas noted "[n]o court opinion issued after *WorldCom* has disagreed with its reasoning or its conclusion." *In re BP p.l.c. Sec. Litig.* No. 4:13-CV-1393, 2014 WL 4923749 at *3.

Defendant also cites to *Wyser-Pratte Mgmt. Co. v. Texlon Corp.* and request that this Court follow the approach in that case. 413 F.3d 553, 568-569 (6th Cir. 2005). However, further to the point made above, the Sixth Circuit acknowledged in a decision last year "*Wyser-Pratte* represents the minority rule." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6th Cir. 2016). In *Stein*, the judges went further to note that they "have doubts about [*Wyser-*

*Pratte's*] holding" but reluctantly acknowledge that they could not, in that opinion, overrule *Wyser-Pratte*. *Id.*

What we can glean from *Stein* is that the court that decided *Weser-Pratte*—a case Defendant relies upon in an effort to defeat Plaintiffs tolling claims—not only (1) admits that it is in the minority on such an approach, but also, that (2) the Sixth Circuit would likely follow the approach of the majority of other courts if it were not for the fact that it must follow its own precedent. *See id.* We have no such binding precedent in the Fifth Circuit. Indeed, Defendant has not cited a single Fifth Circuit opinion that limits tolling. *See generally* Def.'s Mem. As such, this Court should follow the lead of the majority of courts across the nation and find that Plaintiffs' claims are tolled by the commencement of *Snyder v. Ocwen Loan Servicing, LLC.*

Here, the class action *Keith Snyder, on behalf of himself and all others similarly situated v. Ocwen Loan Servicing, LLC*, Case No. 1:14-cv-8461, filed against Defendant on October 27, 2014 in the Northern District of Illinois, asserts federal TCPA claims on behalf of the class against Defendant. Based on *American Pipe* tolling, the limitations period for TCPA claims against Defendant is tolled for any prospective class members, including Plaintiff. As the same claim is alleged here against the same defendant, Plaintiffs' claims are tolled. Plaintiffs have properly pled claims within four years prior to the filing of the *Snyder* action, as Defendant was on notice of its abusive and illegal collection tactics in 2014 when

*Snyder* was filed. Therefore, any violations by Defendant after October 27, 2010 are subject to liability under the TCPA and should not be dismissed.

### B.   *Tolling Applies to All of Plaintiffs' State Law Claims*

When determining which claims benefit from such tolling, courts have rejected the notion that the individual action be "identical in every respect" to the class action. *Tosti v. Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) (noting that "such a rule would be illogical"). Rather, "when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'" *Crown*, 462 U.S. at 355 (Powell, J. concurring) (quoting *American Pipe*, 414 U.S. at 562 (Blackmun, J. concurring)). Although an individual's action may present different legal claims, tolling is proper for those claims with the same factual basis as the class action. *Cullen v. Margiotta*, 811 F.2d 698, 720-21 (2d Cir. 1987) (applying tolling to federal claim based on filing of state class-action suit relying on different legal theory than federal one because: (1) factual bases for two claims were same and alleged coercion, (2) witnesses and evidence were same, and (3) defendant was on notice to preserve evidence after being sued in state case— further reasoning that only allowing tolling for identical claims "would encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification, thereby producing the very

result [] courts seek to prevent by such tolling, *i.e.*, court congestion, wasted paperwork and expense); *see also, Cowles v. Bank W.*, 719 N.W.2d 94, 105 (Mich. 2006) (rejecting argument that only identical claims are tolled and stating that "a class-action complaint tolls the period of limitations for a class member's claim that arises out of the same factual and legal nexus as long as the defendant has notice of the class member's claim and the number and generic identities of the potential plaintiffs"). Allowing tolling on non-pled state law claims that arise from the same set of facts aligns with the spirit and purpose of *American Pipe*. 414 U.S. at 553. Tolling all claims that derive from the nucleus of common facts alleged in the initial class complaint promotes judicial efficiency and economy. Treating them separately would discourage class actions, and instead encourage individual lawsuits to preserve individual rights—the scenario *American Pipe* expressly aimed to extinguish. *Id.* at 554. Preserving ancillary state law rights that arise under the exact same facts should be no different.

Indeed, Texas state courts have not only found that a tolling doctrine exists under Texas state law,[4] but that the scope of claims that are tolled expands beyond the claims presented in the related class action. *See Asplundh Tree Expert Co. v. Abshire*, 517 S.W.3d 320, 346 (Tex. App.–Austin 2017). In *Asplundh*, the Court of Appeals of Texas noted that "having reviewed the cases applying tolling in the class-action context, we have found nothing to support a separate determination that the tolling doctrine could somehow limit the types of damages and remedies

---

[4] *See Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 724 (Tex. App.–Houston [1st Dist.] 2015, no pet.) (explaining "that the filing of a putative class-action suit in a Texas state court suspends the running of limitations for all purported members of the class" under doctrine "commonly known as *American Pipe* tolling" and applying that doctrine to claims in case); *All Am. Life & Cas. Ins. Co. v. Vandeventer*, No. 02-05-00016-CV, 2006 WL 742452, at *2 (Tex. App.–Fort Worth Mar. 23, 2006, no pet.) (mem. op.) (discussing how all "parties agree that . . . the running of limitations was tolled when" class action was filed); *Ventura v. Banales*, 905 S.W.2d 423, 425 n.2 (Tex. App.–Corpus Christi 1995, orig. proceeding) (recognizing that like federal courts "Texas likewise suspends the applicable statute of limitations as to all purported members of the class upon the filing of the class action, such that any time remaining on the statute of limitations of the class members' individual causes of action on the date of the filing of the lawsuit is restored and begins to run again on the date the class action is dismissed"); *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757 (Tex. App.–Amarillo 1995, writ denied) (noting that appellate courts have held that tolling applies when "the decision of whether a class was entitled to certification" was pending); *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 863 (Tex. App.–Beaumont 1995, writ denied) (observing that "statute of limitations was ... tolled subsequent to" filing of class action); *Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469, 471–73 (Tex. App.–Austin 1994, writ denied) (explaining that "interests presented" in suit by attorney general "in the public interest" were "closely akin to the interests presented in a class action litigation," stating that "class actions have been held to toll the statute of limitations when a class was decertified or if class members decided to opt out because strict application of the statute of limitations in these circumstances would be inequitable," applying tolling doctrine from *American Pipe* to claims from homeowners who filed their own suit after rejecting settlement offer obtained by attorney general on behalf of "group of homeowners," and concluding that defendant was "not significantly prejudiced, having been put on notice of the claims presented"); *Walker v. Polyscience Corp.*, No. 14-89-00678-CV, 1990 WL 79838, at *2 (Tex. App.–Houston [14th Dist.] June 14, 1990, no writ) (not designated for publication) (overruling issue asserting that summary judgment was improper on grounds that statute of limitations had passed but applying *American Pipe* tolling, concluding that statute of limitations had passed even though it had been tolled during pendency of class action, and explaining that "the filing of the original class suit suspends the applicable statute of limitations and the period remains tolled for all members of the class until class certification is denied" and that after certification is denied, "the class members must timely intervene or bring individual suits in order to preserve their interest in the subject of the suit"); *Mayfield v. San Jacinto Sav. Ass'n*, 788 S.W.2d 119, 121 (Tex. App.–Houston [14th Dist.] 1990, writ denied) (noting that "a class action suit suspends the running of the statute only as to all members of the class" and concluding that doctrine did not apply because "appellants have failed to show that their claims fall within the class of claims presented in" class action and that even if doctrine applied and if claims were tolled, claims were still untimely); *Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. App.–Houston [14th Dist.] 1987, no writ) (relying on *American Pipe* and holding that "even though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations as to all purported members of the class . . . until class certification is denied," that "the right to pursue an individual cause of action is not foreclosed by decertification of the class," and that "[a]ny time remaining on the statute of limitations of the unnamed property owners' individual cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was decertified").

that may be pursued in a cause of action that was tolled during the pendency of a class action." *Id.* at 345 (citing *ConocoPhillips*, 465 S.W.3d at 725 (determining that tolling applied to individual claims)). So long as "the claims share a common factual basis and legal nexus," related state law claims must be tolled along with the claims alleged in the related class action. *See Asplundh*, 517 S.W.3d at 345 (holding "we must also conclude that the statutes of limitations for the nuisance and trespass claims were tolled while the class-action petition was pending.").

Here, the same calls that are at issue for Plaintiffs' TCPA claims are also at issue for Plaintiffs' state law claims. These cases "concern the same evidence, memories, and witnesses as the subject matter of the original class suit" *American Pipe*, 414 U.S. at 562 (Blackmun, J. concurring). At issue in this set of twenty-five cases is *over thirty-two thousand phone calls* to collect a debt allegedly owed. [*See, e.g.,* Doc. No. 14, ¶¶ 24, 29]. In no conceivable sense of the word is it reasonable to call twenty-five people over thirty-two thousand times. Again, as noted above, Defendant was on notice of its abusive and illegal collection tactics in October 27, 2014 when *Snyder* was filed. Therefore, under the two year statutes of limitations for all of Plaintiffs' state law causes of action, their claims encompass calls made from October 27, 2012 through present. *See, e.g., Vine Street LLC v. Keeling*, 361 F. Supp. 2d 600, 604 (E.D. Tex. 2005) (applying two-year statute of limitations to negligence and negligence per se claims); *Clark v. Deutsche Bank Nat. Trust Co.*, No. 3:14–CV–

3590–B, 2015 WL 4093948, at *8 (N.D. Tex. Jul. 7, 2015) (applying two-year statute of limitations to TDCA claim); *In re: Marcos F. Lopez,* Adv. No. 13-07019, 2015 WL 1207012, at *5 (S.D. Tex. Bankr. Mar. 12, 2015) (explaining that the common law tort of unreasonable collection is an intentional tort and, thus, is subject to the two-year statute of limitations period under Tex. Civ. Prac. & Rem. § 16.003).

Accordingly, since Plaintiffs' state law claims "share a common factual basis and legal nexus" with the TCPA claims alleged in the *Snyder* class action, Plaintiffs' state law claims must be tolled. As Defendant seeks to limit Plaintiffs' state law claims to the last two years, Defendant's Motion to Dismiss should be denied.

## II. Plaintiffs Adequately State Plausible Claims

### A. *Plaintiffs Adequately Plead Claims Under Negligence[5]*

#### i. *Plaintiffs properly allege Defendant owed Plaintiffs a duty of care*

The elements of a negligence claim are (1) that a duty exists, (2) there was a breach of that duty, and (3) damages resulted from the breach. *Hayes v. U.S.*, 899 F.2d 438, 443 (5th Cir. 1990). Courts have found that a creditor-bank owes a duty of reasonable care to its customers in the collection of debt. *Colo. Capital v. Owens*, 227 F.R.D. 181, 188 (E.D.N.Y. 2005). Although a creditor generally has a right to take reasonable action to collect payment from a consumer, the consumer may pursue common law claims against the creditor when those actions "exceed[] the bounds of

---

[5] Plaintiffs oppose Defendant's Motion to Dismiss as it relates to the common law claim of negligence, but agree to voluntarily dismiss their Negligence *per se* claims.

reasonableness." *Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1237 (D. Kan. 2003). *See also, Tourgeman v. Collins Fin. Servs.*, 2010 U.S. Dist. LEXIS 123683, *18, 2010 WL 4817990 (S.D. Cal. Nov. 22, 2010) (rejecting defendant's request to hold as a matter of law that a collector owed no duty of care to the consumer). Plaintiff's "lack of bargaining power coupled with conflicts of interest that exist in the modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers[.]" *Hatton v. Bank of Am., Nat'l Ass'n*, No. 1:15-cv-00187-GSA, 2015 U.S. Dist. LEXIS 89448, at *22 (E.D. Cal. July 8, 2015) (citations omitted). As an example, courts have found that over 90 calls in a 15 month period was unreasonable, amounting to an invasion of privacy. *See, e.g., Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149, 1164-65 (N.D. Cal. 2007); *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009). Here, we have *tens of thousands of calls.*[6] [*See, e.g.,* Doc. No. 14, ¶¶ 24, 29].

In Texas, regardless of whether or not there is a special or fiduciary duty otherwise imposed, "a lender may still owe a borrower the duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citing *In re Thrash*, 433 B.R. 585, 597–98 (N.D. Tex. 2010); *see also Phuwadol Thamathitikhun v. Bank of Am., N.A.*, No. 6:15-CV-390, 2016 WL 1077822, at *5 (E.D. Tex. Mar. 18,

---

[6] For the purposes of the negligence cause of action, as noted *supra*, only the calls from October 27, 2012 to present are actionable pursuant to the statute of limitations. The 32,583 calls alleged only account for those calls that occurred until December of 2015 with the exception of one Plaintiff. [*See, e.g.,* Doc. No. 14, ¶ 24]. Calls continued on beyond December 2015 in excess of the 32,583 calls listed in the Amended Complaints. [*See, e.g.,* Doc. No. 14, ¶ 25].

2016) (denying a defendant mortgagor's Motion for Summary Judgment with respect to whether the defendant mortgagor owes a duty to the plaintiff mortgagee under the common law theory of negligence). This Court in *Hurd* articulated that "[i]n deciding whether to impose a duty, a court must balance 'the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'" 880 F. Supp. 2d at 763 (citing *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996)).

Here, Plaintiffs allege that Defendant harassed Plaintiffs by calling them *tens of thousands of times*. [*See, e.g.,* Doc. No. 14, ¶¶ 24, 29]. Defendant went beyond its role as a lender to become an aggressive debt collector.  Such egregious conduct was taken without Defendant exercising reasonable care and competence. *See Hurd*, 880 F. Supp. 2d at 763. There is absolutely no legitimate, reasonable, or conceivable purpose for calling a group of twenty-five people *tens of thousands of times*. It cannot be reasonably argued that it was unforeseeable that Defendant's systematic harassment would cause injury upon each of the Plaintiffs in the group of twenty-five cases contemplated here. On the contrary, Defendant conducted itself in the way that it did so that Plaintiffs would do whatever Defendant wanted in order to make the calls stop. The risk of injury to Plaintiffs was not only foreseeable, but specifically intended.

Plaintiffs alleged facts to support that Defendant exceeded the bounds of

reasonableness by calling Plaintiffs in an unrelenting and repetitive nature, causing Plaintiffs to miss calls from family friends and disrupting Plaintiffs' peace and enjoyment. [*See, e.g.,* Doc. No. 14,¶¶ 38-43]. These facts are sufficient to establish that relief under negligence is at least plausible. *Twombly*, 550 U.S. at 570. Therefore, Defendant's Motion should be denied.

### ii.   *Plaintiffs properly allege damages to support negligence claims*

The economic loss rule generally only "precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney, Corp.*, Inc., 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998). Particular to negligence causes of action, "the Supreme Court of Texas has issued an opinion reasoning that a bright line rule barring negligence actions for purely economic losses is simply too broad." *Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP-11-CV-166-KC, 2011 WL 5976918, at *8 (W.D. Tex. Nov. 29, 2011) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex.

2011)); *see also Hurd*, 880 F. Supp. 2d at 764 (holding on a motion to dismiss that "the negligence claim should not be held barred by the economic loss rule at this procedural juncture."). "Moreover, under Texas law, mental anguish is a form of 'actual damages.'" *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 473 (5th Cir. 2015) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002)).

At this stage, Plaintiffs' claims premised upon negligence cannot be dismissed due to their alleged damages. Plaintiffs allege that the *tens of thousands of calls* they received invaded their privacy, caused emotional distress and embarrassment, consumed and wasted their cell phone battery life, wasted hours of their time, and caused them frustration and annoyance. [*See, e.g.,* Doc. No. 14, ¶¶ 46-50]. These allegations of mental anguish damages are a recoverable form of actual damages under Texas law. *See McCaig*, 788 F.3d at 473.

Nonetheless, Plaintiffs' factual allegations support that Defendant's conduct was conducted with intent or malice and that the injury was disturbing to the degree that mental anguish was a foreseeable result. *See City of Tyler v. Likes*, 962 S.W.2d 489, 496-98 (Tex. 1997). Again, Plaintiffs alleged *tens of thousands of calls*. [*See, e.g.,* Doc. No. 14, ¶ 29]. Defendant certainly did not *accidentally* call Plaintiffs thousands upon thousand of times—on weekdays, weekends, holidays, morning and night—it purposefully and intentionally called Plaintiffs with that unrelenting ferocity in an effort to oppress and harass. [*See, e.g.,* Doc. No. 14, ¶¶ 29, 30, 37-39]. It willfully bullied Plaintiffs to get them to submit. Those intentional and

malicious actions caused Plaintiffs damages. [*See, e.g.,* Doc. No. 14, ¶¶ 46-50]. Accordingly, Plaintiffs claim of negligence is at least plausible and must survive Defendant's Motion to Dismiss. *Twombly*, 550 U.S. at 570.

### B.   *Plaintiffs Adequately Plead Violations of the TDCA*

Regarding Plaintiffs' TDCA claims, Defendant attempts to rehash the same arguments it posited against Plaintiffs' negligence claims—i.e. that Plaintiffs cannot prove their damages or that their damages are not sufficient under Texas law. *See* Def.'s Mem. pgs. 18-20. However, the Fifth Circuit has squarely addressed and dispatched these sorts of arguments against TDCA liability for mortgagors conduct upon their mortgagees. *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463 (5th Cir. 2015). In *McCaig*, the plaintiffs alleged in their complaint and testified in the underlying trial that the defendant mortgagor caused them significant emotional distress and mental anguish. *Id.* at 471. The jury found that the defendant violated multiple provisions of the TDCA and awarded the plaintiffs damages. *Id.* The Fifth Circuit, in reviewing the matter, explored and explained a number things directly applicable to this case. For example, the Fifth Circuit explained that "[u]nder Texas law, mental anguish damages is a form of 'actual damages.'" *Id.* at 473 (citing *Bentley*, 94 S.W.3d at 604). Importantly, "Plaintiffs are not required to show the mental anguish resulted in physical symptoms." *McCaig*, 788 F.3d at 482 (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

The Fifth Circuit also held that the economic loss rule does not bar TDCA

claims. *McCaig*, 788 F.3d at 475. Even if there are contracts between the parties and even if the conduct alleged also amounts to a breach of contract, defendants can still be held liable for violative conduct under the TDCA. *Id.* The court summed up its analysis by stating "[p]ut differently, if a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *Id.*

Here, Plaintiffs alleged, among other things, frustration, disruption, annoyance, emotional distress, and embarrassment—i.e. mental anguish damages—as a result of Defendant "causing the telephone to ring repeatedly or continuously, *or* making repeated or continuous telephone calls with the intent to harass a person at the called number." Tex. Fin. Code Ann. § 392.302 (West 2017) (emphasis added); [*See, e.g.,* Doc. No. 14, ¶¶ 38-50]. These damages, according to the Fifth Circuit, are recoverable under the TDCA. *See McCaig*, 788 F.3d at 482. For the purposes of the actionable timeline on the calls from Defendant to Plaintiffs, from October 27, 2012 to present, Defendant called Plaintiffs *tens of thousands of times*. [*See, e.g.,* Doc. No. 14, ¶ 29]. All of those calls directly relate to Plaintiffs causes of action and claims for damages. [*See, e.g.,* Doc. No. 14, ¶¶ 35-50 (repeatedly reiterating that "the calls" were what were at issue and caused harm)]. If *tens of thousands of calls* does not constitute "causing the telephone to ring repeatedly or continuously," then what does? *See* Tex. Fin. Code Ann. § 392.302 (West 2017). Even if this Court takes the minority approach and does not toll Plaintiffs' state law claims, Plaintiffs still alleged

the "unrelenting" and "repetitive" calls caused Plaintiffs damages from May 2015 through present. [*See, e.g.,* Doc. No. 14, ¶¶ 24, 25, 39].

As held by the Fifth Circuit, since the harm alleged is recoverable under the TDCA and because Plaintiffs allege facts sufficient to support plausible cases under the TDCA, Defendant's Motion to Dismiss must be denied.

**C.   *Plaintiffs Adequately Plead Claims of Unreasonable Collection Efforts***

> *i.   Plaintiffs plead the requisite conduct for a claim of unreasonable collection efforts*

A claim of unreasonable collection efforts is an intentional tort, though "the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. 2008). However, Texas courts have found liability in cases where defendants made "frequent phone calls at all hours[.]" *Credit Plan Corp. of Houston v. Gentry*, 516 S.W.2d 471, 476 (Tex. Civ. App. 1974), writ granted (Apr. 30, 1975), rev'd on other grounds, 528 S.W.2d 571 (Tex. 1975). As noted *supra*, Texas recognizes a right of recovery for mental distress unaccompanied by physical injury; therefore, there is no requirement that emotional distress manifest itself physically to be compensable. *McCaig*, 788 F.3d at 482 ("Plaintiffs are not required to show the mental anguish resulted in physical symptoms.").

Despite Defendant inflicting the same conduct upon twenty-five different people, over 500 pages of Amended Complaints, the *tens of thousands of calls* at

issue, and the repeated allegations that Defendant's practices (1) invaded Plaintiffs' privacy, (2) caused emotional distress and embarrassment, (3) consumed and wasted Plaintiffs' cell phone battery life, (4) wasted hours of their time, and (5) caused Plaintiffs frustration and annoyance—*despite all of this*—Defendant claims that Plaintiffs' unreasonable collection efforts claims are deficient. [*See, e.g., generally*, Doc. No. 14]. Once more, Defendant attempts uses the same approach it had with the other state law causes of action. *See* Def.'s Mem. pgs. 20-23. And again, as with the the negligence and TDCA claims above, for the purposes of the actionable timeline on the calls from Defendant to Plaintiffs, from October 27, 2012 to present, Defendant called Plaintiffs *tens of thousands of times*. [*See, e.g.,* Doc. No. 14, ¶ 29]. Plaintiffs all allege that Defendant continued to call Plaintiffs from May of 2015 onward as well. [*See, e.g.,* Doc. No. 14, ¶¶ 24, 25]. Again, though Defendant may want to have it otherwise, "we must remember that the question at the motion to dismiss stage is not whether [a Plaintiff] has *proven* the elements to succeed . . . or even whether he has made 'detailed factual allegations[;]' . . . [t]he question is whether [Plaintiff] has plausibly alleged enough information that, *with discovery*, he could prove [] Defendants are liable." *Flagg*, 647 F. App'x at 319.

ii.  *Plaintiffs properly allege damages to support unreasonable collection efforts claims*

Contrary to what Defendant contends, physical harm is not entirely necessary for unreasonable collection efforts claims. *See* Def.'s Mem. pg. 22. In support of this

contention, Defendant either misunderstands the Fifth Circuit case it reaches back 35 years to cite, *McDonald v. Bennett*, or attempts to mislead the Court by only quoting a limited passage of that case. 674 F.2d 1080 (5th Cir. 1982). Rather than outright prohibiting mental anguish damages, the *McDonald* court found that in the case before it, mental anguish damages were not sufficient to sustain a finding for damages for *that plaintiff* in *that case* where there was no physical injury. 674 F.2d at 1089. The Fifth Circuit actually acknowledged that Texas authorities allow for mental anguish damages unaccompanied by physical injury in cases of "egregious abuses in debt collection." *Id.* at 1088; *see also, Davidson v. Lee*, 139 S.W. 904, 907 (Tex. App.-Galveston 1911, writ denied) (holding damages for mental suffering unaccompanied by physical injury are recoverable "when the wrong complained of is a willful one intended by the wrong-doer to wound the feelings and produce mental anguish and suffering, or from which such result should be reasonably anticipated, as a natural consequence.").

In fact, Texas courts have held that telephone calls harassing a debtor can constitute unreasonable collection efforts. *See, e.g., Bray v. Cadle Co.*, 2010 WL 4053794, at *18–19 (S.D. Tex. Oct.14, 2010) (citing Texas cases where harassing phone calls were considered unreasonable collection efforts). This Court recently addressed an unreasonable collection efforts claim in a case with facts similar to this case. *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073 (N.D. Tex. Oct. 3, 2012). In *Elis v. Bank of America, N.A.*, the Court evaluated the plaintiff's claims that his mortgage company would call him at frequent and

unreasonable times.  *Id.* at *5. The Court noted that "Texas courts generally reserve this tort for actual collection efforts, such as telephone calls or approaching the debtor, that overstep the bounds of routine collection methods through excessive harassment." *Id.* As that principle applied to that case, the Court found that:

> Enis has stated a plausible claim for unreasonable collection efforts because of the alleged harassing phone calls. According to the amended complaint, "BOA called Plaintiff repeatedly all day long every day and as late as 11:00 at night even though Plaintiff told BOA not to call." Am. Compl. ¶ 39; *see also id.* at ¶ 18 ("BAC called Plaintiff every hour from around 8 a.m. until as late as 11:00 p.m. harassing Plaintiff about his mortgage.").

*Id.*

As this Court has done before, and in accord with all of the arguments *supra*, Plaintiffs again request that Defendant's Motion to Dismiss be denied. *Tens of thousands of calls*—at frequent and unreasonable times after Plaintiffs requested the calls to stop—caused Plaintiffs significant mental anguish. Those mental anguish damages are properly alleged and recoverable under claims of unreasonable collection efforts.

### D.  Plaintiffs Hickman and Villalobos's TCPA Claims do not Fail

Plaintiffs Hickman and Villalobos only cited calls to their residential telephone numbers to support of their state law causes of action and to for any calls made with artificial or prerecorded voice in violation of 27 U.S.§ 227(b)(1)(B). [*See, e.g.*, Doc. 14, ¶ 28]. However, as Defendant notes, such calls are not actionable under 27 U.S.§ 227(b)(1)(A)(iii). *See* Def.'s Mem. pg. 23.

<u>CONCLUSION</u>

Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied because Plaintiffs state facts sufficient to support Plaintiffs' claims and because tolling applies to both the TCPA and Plaintiffs' state law causes of action under *American Pipe*. Should the Court grant Defendant's Motion to Dismiss, in whole or in part, Plaintiffs respectfully request leave to amend each Amended Complaint of any deficiencies.

Respectfully Submitted,

Date: <u>August 23, 2017</u>          By: <u>/s/ Anthony P. Chester</u>
                                   Anthony P. Chester (SBN 24092253)
                                   **HYDE & SWIGART**
                                   1910 Pacific Ave., Suite 14155
                                   Dallas, TX 75201
                                   Telephone: (952) 225-5333
                                   Facsimile: (800) 635-6425
                                   Email: tony@westcoastlitigation.com
                                   *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

On August 23, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that all parties were served via electronic case filing, email, or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

By: <u>/s/ Anthony P. Chester</u>
    Anthony P. Chester