# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MOISES AGUILAR, JR. ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-cv-1165-B |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The twenty-five plaintiffs in this case claim that Ocwen Loan Servicing, LLC (Ocwen) violated the federal Telephone Consumer Protection Act (TCPA) and the Texas Debt Collection Act (TDCA) and committed the Texas common-law torts of negligence and unreasonable debt collection by using automated dialing systems to call the plaintiffs numerous times.[1] Ocwen has now moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss many of the plaintiffs' claims, contending that some are time barred and others insufficiently pleaded. Doc. 22, Mot. to Dismiss. The Court will first determine which claims are time barred and will then determine whether the plaintiffs have adequately pleaded their remaining claims. As detailed below, the Court **GRANTS IN PART AND DENIES IN PART** Ocwen's motion to dismiss.

---

[1] For convenience, the Court will refer to the plaintiffs' TDCA and Texas common-law claims collectively as the plaintiffs' "Texas claims."

# I.

# BACKGROUND

A.     *Factual History*[2]

On October 27, 2014, a class action was filed against Ocwen in the Northern District of Illinois in which the class alleges among other things,[3] that Ocwen violated 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA. Mem. Op. & Order at 6, *Snyder v. Ocwen Loan Serv., LLC*, No. 1:14-cv-8461 (N.D. Ill. Jun. 28, 2017), ECF No. 223. The *Snyder* Court conditionally certified a class settlement on October 5, 2017. Order, *Snyder v. Ocwen Loan Serv., LLC*, No. 1:14-cv-8461 (N.D. Ill. Oct. 5, 2017), ECF No. 266.

On May 3–8, 2017, the twenty-five plaintiffs in this case brought claims similar to those of the *Snyder* class, alleging that Ocwen attempted to collect debts from them by using "automatic telephone dialing system[s]"[4] to call them numerous of times and that the repeated calls drained the plaintiffs' phone batteries and caused them various forms of emotional distress, including the disruption of the plaintiffs' personal and professional lives.[5] Because of the calls, the plaintiffs claim

---

[2] This factual history is drawn from the plaintiffs' amended complaints. Citations to court documents are to documents in case 3:17-cv-01165-B, the case number under which the Court consolidated the plaintiffs' cases, unless another case number is indicated.

[3] The *Snyder* complaint also accuses Ocwen of violating the federal Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. § 1692 *et seq.* The *Snyder* FDCPA claims do not rely on allegedly harassing phone calls and are therefore irrelevant to this case.

[4] *See* 47 U.S.C. § 227(a)(1).

[5] 3:17-cv-1165, Doc. 14, Am. Compl., ¶¶ 24–25, 29, 38–42, 48; 3:17-cv-1235-B, Doc. 14, Am. Compl., ¶¶ 26–27, 33–39, 47–51, 57. Except for the 3:17-cv-1235-B Amended Complaint cited in this footnote, the live complaints in this case are similar enough to the 3:17-cv-1165 complaint, that the Court will cite the 3:17-cv-1165 complaint when referring generally to the live complaints. The Court will cite other complaints when relevant differences among the complaints so require.

to have ignored calls from unknown numbers, which allegedly caused the plaintiffs to miss important communications from friends and family.[6] Each plaintiff alleges a date range in which they say Ocwen called them and the amount and frequency of calls within a narrower date range.[7] For example, Plaintiff Aguilar alleges that Ocwen called him between March 30, 2011 and December 13, 2015 and that "on information and belief," Ocwen continued to call him after December 13, 2015, and Aguilar describes in detail the amount and frequency of calls received from April to September 2014. Doc. 14, Am. Compl., ¶¶ 24–25, 29–30. Most of the plaintiffs complain about alleged calls to their cellular phones. 3:17-cv-1165, Doc. 14, Am. Compl., ¶¶ 24–25. But Plaintiffs Hickman and Villalobos complain also about calls to their home phones.[8] The Court has detailed below the plaintiffs' allegations regarding the timing, amount, and frequency of the alleged calls.

Table 1

| Plaintiff/Case Number | Date Range of Calls (to cell phone unless otherwise noted) | Dates of Detailed Allegations |
|---|---|---|
| Aguilar/3:17-cv-01165 | March 30 2011 through December 13, 2015 and after December 13, 2015 | April through September 2014 |

---

[6] 3:17-cv-1165, Doc. 14, Am. Compl., ¶ 42.

[7] 3:17-cv-1165, Doc. 14, Am. Compl., ¶¶ 24–25, 29–30; 3:17-cv-1235-B, Doc. 14, Am. Compl., ¶¶ 24–27, 31–39.

[8] 3:17-cv-01183, Doc. 15, Am. Compl. ¶ 29; 3:17-cv-01235, Doc. 14, Am. Compl., ¶¶ 24–25.

| | | |
|---|---|---|
| Casey/3:17-cv-01166 | April 4, 2011 through December 16, 2015 and after December 16, 2015 | January through October 2012 |
| Condarco/3:17-cv-01167 | June 16, 2011 through December 16, 2015 and after December 16, 2015 | August 2014 through July 2015 |
| Contreras/3:17-cv-01168 | April 5, 2011 through December 16, 2016 and after December 16, 2016 | July through December 2014 |
| Rodriguez/3:17-cv-01169 | March 30, 2011 through December 16, 2015 and after December 16, 2015 | April through August 2015 |
| Zamora/3:17-cv-01181 | March 30, 2011 through December 15, 2015 and after December 15, 2015 | July through October 2012 |
| Wildberger/3:17-cv-01182 | December 13, 2011 through December 15, 2015 and after December 15, 2015 | June through December 2014 |

| | | |
|---|---|---|
| Villalobos/3:17-cv-01183 | Home phone: unidentified dates<br>Cellular phone: April 4, 2011 through July 29, 2015 and after July 29, 2015 | June through December 2014 |
| Castillo/3:17-cv-01184 | March 30, 2011 through December 16, 2015 and after December 16, 2015 | May through August 2012 |
| Pinilla/3:17-cv-01185 | December 20, 2011 through December 14, 2015 and after December 14, 2015 | January through March 2015 |
| Pinilla/3:17-cv-01186 | November 23, 2011 through December 16, 2015 and after December 16, 2015 | January 2012 |
| Pizzuto/3:17-cv-01200 | October 5, 2011 through March 2, 2015 and after March 2, 2015 | June through December 2012 |
| Meis/3:17-cv-01201 | March 5, 2013 through November 21, 2016 and after November 21, 2016 | February through August 2015 |

| | | |
|---|---|---|
| Snerling/3:17-cv-01202 | February 14, 2012 through November 7, 2014 and after November 7, 2014 | January through July 2013 |
| Espinosa/3:17-cv-01210 | March 5, 2013 through December 16, 2015 and after December 16, 2015 | March through April 2013 |
| Latunde/3:17-cv-01211 | April 18, 2011 through October 24, 2015 and after October 24, 2015 | 2012 through 2014 |
| Gonzales/3:17-cv-01212 | September 5, 2011 through December 15, 2015, and after December 15, 2015 | June through December 2014 |
| Jack/3:17-cv-01213 | January 13, 2012 through December 16, 2015 and after December 16, 2015 | May through December 2014 |
| Lock/3:17-cv-01214 | September 5, 2011 through December 16, 2015 and after December 16, 2015 | May through December 2014 |
| Bowden, Sr./3:17-cv-01232 | April 4, 2011 through April 14, 2014 and after April 14, 2014 | June through December 2012 |

| | | |
|---|---|---|
| Chavez/3:17-cv-01233 | May 8, 2012 through August 13, 2015 and after August 13, 2015 | 2014 and April 2015 |
| Gribben/3:17-cv-01234 | April 10, 2012 through December 16, 2015 and after December 16, 2015 | 2012 and January 2015 |
| Hickman/3:17-cv-01235 | Home phone: April 18, 2011 through June 25, 2013 Cell Phone: July 5, 2013 through December 16, 2015 and after December 16, 2015 | Home Phone: August 2011 through June 2013 Cell Phone: July 2013 through December 2015 |
| Leeder/3:17-cv-01236 | February 19, 2013 through December 16, 2015 and after December 16, 2015 | April through November 2014 |
| Odle/3:17-cv-01237 | September 5, 2011 through April 23, 2014 and after April 23, 2014 | January through October 2012 |

B.    *Procedural History*

The plaintiffs filed their complaints on May 3–8, 2017, and the Court consolidated their cases on July 26, 2017. Doc. 19, Order Consolidating Cases. The plaintiffs filed amended complaints on July 8, 2017, which Ocwen moved to dismiss on August 2, 2017. Doc. 22, Mot. to Dismiss. Because the plaintiffs responded, Doc. 25, Response, and Ocwen replied, Doc. 31, Reply, Ocwen's motion

to dismiss is ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When analyzing Rule 12(b)(6) motions, courts generally consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). During this review, factual allegations must be viewed as true and taken "in the light most favorable to the plaintiffs." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) motions turn on whether a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Facially plausible complaints "'allege more than labels and conclusions'[;] . . . [the] 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). If the allegations lack sufficient detail, "this basic deficiency should . . . be exposed" before the parties and court spend unnecessary time and resources on the case. *Twombly*, 550 U.S. at 558.

## III.

## ANALYSIS

A.     *Statute of Limitations*

If a plaintiff's pleadings make clear that a statute of limitations bars the plaintiff's claims, a

court can rule on a statute-of-limitations defense at the motion-to-dismiss stage. *Williams v. Chase Home Fin., LLC*, No. 3:13-cv-1307-G (BH), 2014 WL 46233, at *3 (N.D. Tex. Jan. 6, 2014). Here, the plaintiffs' pleadings establish that the statute of limitations bars some of the plaintiffs' claims, so ruling on Ocwen's statute-of-limitations defense is appropriate at this juncture.

### 1. The Parties' Arguments

Ocwen argues that the statute of limitations narrows all of the plaintiffs' claims. Doc. 22, Mot. to Dismiss, 7. The plaintiffs' claims fall into two categories: federal TCPA claims and Texas state-law claims. The statute of limitations for the TCPA claims is four years, 28 U.S.C. § 1658(a), and the statute of limitations for the Texas claims is two years, Tex. Civ. Prac. & Rem. Code § 16.003(a); *see Vine St. LLC v. Keeling*, 361 F. Supp. 2d 600, 604 (N.D. Tex. 2005) (applying § 16.003(a)'s two-year statute of limitations to negligence claim); *In Re Marcos F. Lopez*, Adv. No. 13-07019, 2015 WL 1207021, at *5 (S.D. Tex. Bankr. Mar. 12, 2015) (applying § 16.003(a)'s statute of limitations to unreasonable-debt-collection claim); *Clark v. Deutsche Bank Nat. Tr. Co.*, No. 3:14-cv-3590-B, 2015 WL 4093948, at *8 (N.D. Tex. Jul. 7, 2015) (applying § 16.003(a)'s statute of limitations to TDCA claim). The plaintiffs filed their complaints on May 3–8, 2017.[9] Absent tolling then, the plaintiffs can hold Ocwen liable for TCPA violations occurring only after May 3–8, 2013 and for state-law violations occurring only after May 3–8, 2015. If Ocwen has its way, the plaintiffs claims will be limited as such. Doc. 22, Mot. to Dismiss, 7.

But the plaintiffs argue that the filing of the *Snyder* action in October 2014 tolled the statute of limitations for their claims. Doc. 25, Resp., 4. Thus, the plaintiffs claim that Ocwen is liable under

---

[9] *See supra* note 6. The Court will provide limitations periods for each plaintiff after determining which claims benefit from tolling.

the TCPA for conduct dating back to 2010 and under Texas law for conduct dating back to 2012. *Id.*

2. Introduction to *American Pipe* Tolling

The plaintiffs' tolling argument depends on *American Pipe & Construction Company. v. Utah*, 414 U.S. 538 (1974). There, with only eleven days remaining under the applicable statute of limitations, the state of Utah filed an antitrust class action against American Pipe on behalf of itself and other public bodies and agencies. *Id.* at 541. After the district court ruled that the suit could not proceed as a class action, *id.* at 542–43, some putative class members moved to intervene even though the statute of limitations had run, *id.* at 543–44. The Supreme Court held that the putative class members could intervene because the filing of the class action tolled the statute of limitations on their claims against American Pipe. *Id.* at 560–61.

The Supreme Court based its holding on the purposes of class actions and statutes of limitations. *Id.* at 555. The purpose of class actions is to protect the rights of putative class members to the relief sought by the putative class by preventing each putative class member from having to intervene to protect her rights. *Id.* at 550, 552. But if the statute of limitations for a putative class member's claim continued to run after the filing of a class action, putative class members could not count on class actions to protect their rights because, if the trial court denied class certification after the limitations period expired, putative class members could not intervene and would therefore lose their claims by relying on the class action. *Id.* at 553. Putative members would need to intervene to protect their claims. *Id.* The result would be a needless multiplicity of protective actions, which was what Rule 23 was designed to prevent. *Id.* at 553–54. Only if the filing of the class action tolled putative class members' claims would class actions protect putative class members' rights because

putative class members could rely on the class action but still have their individual claims if their class were not certified.

In addition to furthering the purpose of class actions, tolling the statute of limitations between the filing of a class action and the decision not to certify does not defeat the purpose of statutes of limitations. *Id.* at 554. Statutes of limitations "are designed to promote justice by preventing surprises through revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* But the filing of a class action puts the defendant on notice of the putative class's claims, which reduces the risk of lost evidence, faded memories, and vanished witnesses. *Id.* at 554–55. The class allegations give the defendant the essential information necessary to determine both the subject matter and size of the prospective litigation. *Id.* at 555. Thus, tolling the statute of limitations for putative class members, whose claims are the same as the named plaintiff's in the class action, does not defeat the purpose of statutes of limitations. *Id.*

Next, *American Pipe* is relevant even though the plaintiffs in this case filed a lawsuit instead of intervening. Although *American Pipe* pertained only to interveners, the Court in *Crown, Cork & Seal Co., Inc. v. Parker* extended *American Pipe* to cover putative class members filing their own lawsuits after their class was not certified. 462 U.S. 345, 352 (1983)

But *American Pipe* and *Crown* are different from this case in two more ways. First, those cases involved decisions to intervene or file lawsuits after the trial court hearing the class action decided not to certify the class. *Am. Pipe*, 414 U.S. at 542–43; *Crown*, 462 U.S. at 347. Here, the plaintiffs filed the present lawsuits before the *Snyder* court ruled on certification. Second, *American Pipe* and *Crown* involved plaintiffs who raised exactly the same claims against exactly the same defendant as

the putative class. *Am. Pipe*, 414 U.S. at 543–44; *Crown*, 462 U.S. at 348. Here, though the *Snyder* suit alleges only TCPA claims, the plaintiffs have filed TCPA and Texas state-law claims against Ocwen. *See, e.g.*, Doc. 14, Am. Compl., ¶¶ 66–99.

The Court must therefore resolve two limitations-related issues: 1) whether the plaintiffs can rely on *American Pipe* tolling even though the *Snyder* court has not determined whether to certify the class and 2) whether *American Pipe* tolling applies to the plaintiffs' Texas claims.

### 3. *American Pipe* Tolling and the Timing of Putative Class Members' Separate Suits

Although the Fifth Circuit has not determined whether a putative class member can benefit from *American Pipe* tolling before the district court hearing the class action has ruled on certification, other circuits have. On one hand, the Second, Ninth, and Tenth Circuits have held that a putative class member can benefit from *American Pipe* tolling even when she chooses to file a lawsuit before the class-action court rules on certification. *In Re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *State Farm Mut. Auto Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1232 (10th Cir. 2008); *In Re WorldCom Secs. Litig.*, 496 F.3d 245, 252 (2d Cir. 2007). On the other, the First and Sixth Circuits have held that a putative class member must wait for certification to be denied in order to benefit from *American Pipe* tolling. *Wyser-Prate Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005); *Glater v. Eli Lilly & Co.*, 712 F.3d 735, 739 (1st Cir. 1983). And although a district court in the Fifth Circuit has required a putative class member to wait for a decision not to certify the class to benefit from *American Pipe* tolling, *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000), a more recent decision relied on the Second Circuit's reasoning to allow a plaintiff to benefit from *American Pipe* tolling before a decision on certification, *In Re BP p.l.c. Sec. Litig.*, No. 4:13-cv-1393, 2014 WL 4923749, at *4 (S.D. Tex. Sept. 30, 2014).

Under the rationale of *American Pipe*, the filing of a class action tolls the statute of limitations for a putative class member to file a separate lawsuit whether the putative class member files before or after the trial court's certification decision. The purpose of *American Pipe* tolling is to prevent putative class members from being forced to intervene or file their own lawsuits based on the fear that their claims will be time barred if their class is not certified. *WorldCom*, 496 F.3d at 256. Essentially, putative class members are plaintiffs in the putative class action until excluded by a decision not to certify or their own opting out. *Id.* at 255. While the putative members are parties to the putative class action, the statute of limitations does not run on their claims against the defendant. *Id.* This is true for putative class members who intervene or file their own suits before a decision on certification as it is of those who wait for a certificating decision. *Id.* Nothing in *American Pipe* or subsequent Supreme Court decisions counsels otherwise. *Id.* As the Second Circuit has indicated, the Supreme Court's statement that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action" should be taken at face value. *Id.*

The Court finds the approach of courts that have said putative class members must wait for a decision on certification unpersuasive. These courts have reasoned that allowing putative class members to file suits or intervene before a decision on certification would defeat the purpose of *American Pipe* by allowing for the "multiplicity of activity" *American Pipe* was intended to prevent. *Rahr*, 142 F. Supp. 2d at 800. But these Courts interpretation of *American Pipe* is slightly wrong. *American Pipe* allowed for tolling because, without tolling, plaintiffs would be forced to intervene or file suit before certification to protect their rights. *WorldCom*, 496 F.3d at 256. Although *American Pipe* tolling likely reduces interventions and suits duplicating class actions, reducing casework was

not the primary goal of *American Pipe*. *Id.* at 256. Thus, reducing interventions and the filing of lawsuits is an inadequate justification for restricting *American Pipe* tolling to putative class members who wait for a decision on certification.

### 4. *American Pipe* Tolling and State-Law Claims

The remaining issue is to what claims *American Pipe* tolling applies. The plaintiffs' TCPA claims are the same as the putative *Snyder* class's, so the *Snyder* action tolled the statute of limitations for the plaintiffs' TCPA claims. The TCPA claims can therefore proceed as pleaded because they are based on conduct that occurred within four years of the filing of the *Snyder* action.

But the rationale of *American Pipe* does not support the extending of *American Pipe* tolling to the plaintiffs' state-law claims. The purpose of *American Pipe* tolling is to further the purpose of class actions without defeating the purpose of statutes of limitations. *Am. Pipe*, 414 U.S. at 555. A key consideration in *American Pipe* was that the putative class member seeking to intervene had the exact same cause of action as the named plaintiff who originally brought the class action. *Johnson v. Ry. Express Agency*, 421 U.S. 454, 467 (1975). Similarly, the putative class member in *Crown* seeking to bring a separate lawsuit raised only the same cause of action as the named plaintiff in the first-filed class action. *Crown*, 462 U.S. at 348. Some lower federal courts have refused to extend *American Pipe* tolling to causes of action not raised in the class action giving rise to the tolling. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282–83 (11th Cir. 2003); *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 227, 259 (D. Conn. 2006); *In Re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 259 (W.D. Tex 1979). *But see Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987); *Tosti v. City of L. A.*, 754 F.2d 1485, 1489 (9th Cir. 1985).

The Court is unpersuaded by the reasoning of those courts that have tolled the statute of

limitations for claims not included in the class action giving rise to tolling. As noted above, the Supreme Court has expressly stated that "the tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson*, 421 U.S. at 467. The sameness of the causes of action was important because the prior filing "necessarily operated to avoid the evil against which the state of limitations was designed to protect." *Id.* The Supreme Court further noted, referring to *American Pipe* tolling, that "[o]nly where there is complete identity of the causes of action will the protections suggested by petitioner necessarily exist." *Id.* at 467 n.14. Thus, under the *American Pipe* rationale, if the class action giving rise to tolling is supposed to put the defendant on notice of claims that might be brought by putative class members after certification is denied, *American Pipe* tolling cannot extend to causes of action not raised in the class action because the class action will not have provided the defendant notice of claims other than those asserted in the class action.

Even under the reasoning of courts that have not restricted *American Pipe* tolling to causes of action identical to those of the putative class, the plaintiffs' Texas claims raise are too different from the *Snyder* TCPA claims for *American Pipe* tolling to apply to them. Courts have extended tolling only to claims with the same factual basis as the putative class's claims. *Tosti*, 754 F.2d at 1489; *Cullen*, 811 F.2d at 720. The TCPA claims in *Snyder* and in this case require the plaintiffs to prove only that the defendant used an "automatic telephone dialing system" to call the plaintiffs' cell phones. 47 U.S.C. § 227(b)(1)(A)(iii). But the plaintiffs' Texas claims require multiple showings the *Snyder* plaintiffs need not make. The plaintiffs' negligence claims require the plaintiffs to show that Ocwen owes the plaintiffs a common-law duty and that Ocwen's alleged wrongful conduct caused the plaintiffs to suffer damages. *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 585 (N.D. Tex.

2013). The plaintiffs' TDCA claims require the plaintiffs to prove damages and wrongful conduct different from what the TCPA requires. *See* Tex. Fin. Code 392.302(4) (prohibiting debt collectors from "causing a telephone to ring repeatedly and continuously, or making repeated or continuous telephone class, with the intent to harass a person at the called number"); *Narango v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 801 (S.D. Tex. 2010) (recognizing that Texas law requires a TDCA plaintiff to prove damages). And to prevail on their Texas unreasonable-collection-efforts claims, the plaintiffs must prove conduct that "overstep[s] the bounds of routine collection methods through excessive harassment. *Everhart v. CitiMortgage, Inc.*, No. CIV.A. H-12-1338, 2013 WL 264436, at *6 (S.D. Tex. Jan. 22, 2013). The TCPA claims in the *Snyder* actions require no evidence of these things, which means the *Snyder* action would not have put Ocwen on notice of the plaintiffs' Texas claims. *American Pipe* tolling therefore does not apply to the plaintiffs' Texas claims.

     5. The Effect of *American Pipe* Tolling In This Case

     Because *American Pipe* tolling applies to the plaintiffs' TCPA claims, the plaintiffs' TCPA claims survive as pleaded.[10] But because *American Pipe* tolling does not apply to the plaintiffs' Texas claims, the plaintiffs can sue under Texas law only for conduct that began two years before they filed this suit. The Court thus dismisses the plaintiffs' Texas claims insofar as they depend on conduct that occurred more than two years before the plaintiffs' filed these lawsuits. The table below provides the limitations periods for the plaintiffs' Texas claims. The plaintiffs cannot rely on conduct that occurred outside these date ranges for their Texas claims. As such, the Court will confine its 12(b)(6) analysis below to alleged conduct that occurred the date ranges in the chart.

---

[10] The Court will narrow Hickman's and Villalobos's TCPA claims as discussed below.

Table 2

| Plaintiff/Case Number | Limitations Period for Texas Claims (two years before complaint)[11] |
|---|---|
| Aguilar/3:17-cv-01165 | May 3, 2015 through May 3, 2017 |
| Casey/3:17-cv-01166 | May 3, 2015 through May 3, 2017 |
| Condarco/3:17-cv-01167 | May 3, 2015 through May 3, 2017 |
| Contreras/3:17-cv-01168 | May 3, 2015 through May 3, 2017 |
| Rodriguez/3:17-cv-01169 | May 3, 2015 through May 3, 2017 |
| Zamora/3:17-cv-01181 | May 3, 2015 through May 3, 2017 |
| Wildberger/3:17-cv-01182 | May 3, 2015 through May 3, 2017 |
| Villalobos/3:17-cv-01183 | May 3, 2015 through May 3, 2017 |
| Castillo/3:17-cv-01184 | May 3, 2015 through May 3, 2017 |
| Pinilla/3:17-cv-01185 | May 3, 2015 through May 3, 2017 |
| Pinilla/3:17-cv-01186 | May 3, 2015 through May 3, 2017 |
| Pizzuto/3:17-cv-01200 | May 4, 2015 through May 4, 2017 |
| Meis/3:17-cv-01201 | May 4, 2015 through May 4, 2017 |
| Snerling/3:17-cv-01202 | May 4, 2015 through May 4, 2017 |
| Espinosa/3:17-cv-01210 | May 6, 2015 through May 6, 2017 |
| Latunde/3:17-cv-01211 | May 6, 2015 through May 6, 2017 |
| Gonzales/3:17-cv-01212 | May 7, 2015 through May 7, 2017 |
| Jack/3:17-cv-01213 | May 7, 2015 through May 7, 2017 |

[11] Tex. Civ. Prac. & Rem. Code § 16.003(a); *see Vine St. LLC v. Keeling*, 361 F. Supp. 2d 600, 604 (N.D. Tex. 2005) (applying § 16.003(a)'s two-year statute of limitations to negligence claim); *In Re Marcos F. Lopez*, Adv. No. 13-07019, 2015 WL 1207021, at *5 (S.D. Tex. Bankr. Mar. 12, 2015) (applying § 16.003(a)'s statute of limitations to unreasonable-debt-collection claim); *Clark v. Deutsche Bank Nat. Tr. Co.*, No. 3:14-cv-3590-B, 2015 WL 4093948, at *8 (N.D. Tex. Jul. 7, 2015) (applying § 16.003(a)'s statute of limitations to TDCA claim).

| Lock/3:17-cv-01214 | May 7, 2015 through May 7, 2017 |
| Bowden, Sr./3:17-cv-01232 | May 8, 2015 through May 8, 2017 |
| Chavez/3:17-cv-01233 | May 8, 2015 through May 8, 2017 |
| Gribben/3:17-cv-01234 | May 8, 2015 through May 8, 2017 |
| Hickman/3:17-cv-01235 | May 8, 2015 through May 8, 2017 |
| Leeder/3:17-cv-01236 | May 8, 2015 through May 8, 2017 |
| Odle/3:17-cv-01237 | May 8, 2013 through May 8, 2017 |

*B. 12(b)(6) Motion*

Ocwen has moved to dismiss the plaintiffs' Texas claims, arguing under Federal Rule of Civil Procedure 12(b)(6) that the plaintiffs have failed to state claims for which relief can be granted. The plaintiffs remaining[12] Texas claims are for common-law negligence, violations of the TDCA, and common-law unreasonable collection efforts. Because the statute of limitations allows claims based on conduct occurring only after May 2015,[13] the Court must disregard allegations based on conduct that occurred before May 2015. The Court will address each of the plaintiffs' claims in turn.

<u>1. Negligence</u>

To prevail on a negligence claim in Texas, a plaintiff must plead and prove that the defendant had a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff damages. *Miller*, 970 F. Supp. 2d at 585. Ocwen says the plaintiffs inadequately pleaded duty and damages. Doc. 22, Mot. to Dismiss, 12, 14.

Here, the plaintiffs plead that Ocwen negligently caused them damages, in the form of

---

[12] The plaintiffs voluntarily dismissed their negligence per se claim. Doc. 25, Resp., 14 n.5.

[13] *See supra* Table 2.

emotional distress, by calling them numerous times.[14] But Texas law imposes no duty to avoid negligently causing emotional distress. *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997). Thus, the Court dismisses the plaintiffs' negligence claims.

### 2. TDCA

Ocwen argues that the Court should dismiss the plaintiffs' TDCA claims because the plaintiffs have inadequately pleaded damages and that wrongful conduct occurred during the limitations period. Doc. 22, Mot. to Dismiss, 18.

The plaintiffs have accused Ocwen of violating Tex. Fin. Code § 392.302(4), *see, e.g.*, Doc. 14, Am. Compl., ¶¶ 84–90, which states that "[i]n a debt collection, a debt collector may not oppress, harass, or abuse a person by . . causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Tex. Fin. Code § 392.302(4). A plaintiff must plead and prove actual damages to prevail on a TDCA claim. *Narango*, 679 F. Supp. 2d at 801.

But many of the plaintiffs have failed to plead facts making it plausible that Ocwen engaged in wrongful conduct during the limitations period, which, because the *American Pipe* tolling does not apply to the plaintiffs' Texas claims, runs only from May 2015 until the plaintiffs filed these lawsuits in May 2017. Though these plaintiffs' pleadings make it plausible that Ocwen called them during the limitations periods, these plaintiffs failed to plead any facts indicating the amount or frequency of calls that occurred in the limitations period, which stating a TDCA claim requires. Tex. Fin. Code § 392.302(4).

---

[14] 3:17-cv-1165, Doc. 14, Am. Compl., ¶¶ 24–25, 29, 38–42, 48.

Although these plaintiffs did describe specific instances of frequent and numerous calls, the plaintiffs' accounts describe conduct that occurred before May 2015. Pleadings pertaining to calls allegedly received outside of the limitations periods do not make it any more or less plausible that Ocwen engaged in wrongful conduct during the limitations period. Thus, because the plaintiffs failed to plead facts making plausible their claim that Ocwen caused the plaintiffs' telephones "to ring repeatedly or continuously, or ma[de] repeated or continuous telephone calls, with the intent to harass" the plaintiffs during the limitations period, Tex. Fin. Code § 392.302(4), the Court dismisses the following plaintiffs' TDCA claims.

Table 3

| Plaintiff/Case Number | Limitations Period for Texas Claims (two years before complaint) | Dates of Detailed Allegations |
|---|---|---|
| Aguilar/3:17-cv-01165 | May 3, 2015 through May 3, 2017 | April through September 2014 |
| Casey/3:17-cv-01166 | May 3, 2015 through May 3, 2017 | January through October 2012 |
| Contreras/3:17-cv-01168 | May 3, 2015 through May 3, 2017 | July through December 2014 |
| Zamora/3:17-cv-01181 | May 3, 2015 through May 3, 2017 | July through October 2012 |
| Wildberger/3:17-cv-01182 | May 3, 2015 through May 3, 2017 | June through December 2014 |
| Villalobos/3:17-cv-01183 | May 3, 2015 through May 3, 2017 | June through December 2014 |
| Castillo/3:17-cv-01184 | May 3, 2015 through May 3, 2017 | May through August 2012 |
| Pinilla/3:17-cv-01185 | May 3, 2015 through May 3, 2017 | January through March 2015 |
| Pinilla/3:17-cv-01186 | May 3, 2015 through May 3, 2017 | January 2012 |

| | | |
|---|---|---|
| Pizzuto/3:17-cv-01200 | May 4, 2015 through May 4, 2017 | June through December 2012 |
| Snerling/3:17-cv-01202 | May 4, 2015 through May 4, 2017 | January through July 2013 |
| Espinosa/3:17-cv-01210 | May 6, 2015 through May 6, 2017 | March through April 2013 |
| Latunde/3:17-cv-01211 | May 6, 2015 through May 6, 2017 | 2012 through 2014 |
| Gonzales/3:17-cv-01212 | May 7, 2015 through May 7, 2017 | June through December 2014 |
| Jack/3:17-cv-01213 | May 7, 2015 through May 7, 2017 | May through December 2014 |
| Lock/3:17-cv-01214 | May 7, 2015 through May 7, 2017 | May through December 2014 |
| Bowden, Sr./3:17-cv-01232 | May 8, 2015 through May 8, 2017 | June through December 2012 |
| Chavez/3:17-cv-01233 | May 8, 2015 through May 8, 2017 | 2014 and April 2015 |
| Gribben/3:17-cv-01234 | May 8, 2015 through May 8, 2017 | 2012 and January 2015 |
| Leeder/3:17-cv-01236 | May 8, 2015 through May 8, 2017 | April through November 2014 |
| Odle/3:17-cv-01237 | May 8, 2013 through May 8, 2017 | January through October 2012 |

Other plaintiffs pleaded facts making their TDCA claims plausible. These plaintiffs pleaded facts pertaining to the amount and frequency of calls they allegedly received from Ocwen during the limitations periods. The Court thus allows the following plaintiffs' TDCA claims to proceed.

Table 4

| Plaintiff/Case Number | Limitations Period for Texas Claims (two years before complaint) | Dates of Detailed Allegations[15] |
|---|---|---|

---

[15] 3:17-cv-01167, Doc. 15, Am. Compl., ¶ 30; 3:17-cv-01169, Doc. 15, Am. Compl., ¶ 30; 3:17-cv-01201, Doc. 17, Am. Compl., ¶ 30; 3:17-cv-01235, Doc. 14, Am. Compl., ¶ 36.

| Condarco/3:17-cv-01167 | May 3, 2015 through May 3, 2017 | August 2014 through July 2015 |
| Rodriguez/3:17-cv-01169 | May 3, 2015 through May 3, 2017 | April through August 2015 |
| Meis/3:17-cv-01201 | May 4, 2015 through May 4, 2017 | February through August 2015 |
| Hickman/3:17-cv-01235 | May 8, 2015 through May 8, 2017 | Home Phone: August 2011 through June 2013 Cell Phone: July 2013 through December 2015 |

### 3. Unreasonable Debt Collection Efforts

Unreasonable Debt Collection Efforts is an intentional tort under Texas common law. *Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at * 8 (N.D. Tex. April 17, 2012) (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)). Texas courts have said the tort includes "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC*, 252 S.W.3d at 868. "[M]ental anguish alone is insufficient to sustain a recovery of damages, at common law, for unreasonable collection efforts." *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982).

Here, even if the plaintiffs have pleaded conduct that would support an unreasonable-debt-collection claim, they have inadequately pleaded damages. The plaintiffs admit that they have pleaded only mental-anguish damages. Doc. 25, Response, 18, 20, 24. But the Fifth Circuit has said mental-anguish damages alone cannot support a claim for unreasonable debt collection. *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982). Thus, the Court dismisses the plaintiffs'

unreasonable-debt-collection claims.

### 4. Hickman's and Villalobos's TCPA claims

Ocwen highlights that Hickman and Villalobos have accused Ocwen of wrongfully calling their home phones in addition to their cellular phones.[16] But the TCPA forbids only certain calls to cellular phones. 47 U.S.C. § 227(b)(1)(A)(iii).[17] Indeed, Hickman and Villalobos have clarified that they accuse Ocwen of violating only Texas law by calling their home phones. Doc. 25, Resp., 24. Thus, the Court dismisses Hickman's and Villalobos TCPA claims insofar as the claims rely on calls to home phone numbers. Hickman's and Villalobos's TCPA claims can proceed insofar as they rely on calls to their cellular phones.

## IV.

## CONCLUSION

First, although the Court finds that a putative class member can benefit from *American Pipe* tolling even if she files her own lawsuit before the class-action court's certification decision, the Court concludes that the *Snyder* action tolled the statute of limitations only for the plaintiffs' TCPA claims. The Court thus **DENIES IN PART** Ocwen's motion to dismiss and allows the plaintiffs' TCPA claims to proceed as pleaded—subject to the Court's finding below regarding Hickman's and Villalobos's TCPA claims. The Court also **GRANTS IN PART** Ocwen's motion and limits each plaintiff's Texas claims to conduct allegedly occurring in the two years proceeding the filing of his

---

[16] 3:17-cv-01183, Doc. 15, Am. Compl. ¶ 29; 3:17-cv-01235, Doc. 14, Am. Compl., ¶¶ 24–25.

[17] The TCPA makes other claims available, but the plaintiffs have not pleaded any of them. *See* 47 U.S.C. § 227(b).

or her complaint.[18] The plaintiffs' Texas claims are **DISMISSED WITH PREJUDICE**[19] insofar as they depend on conduct that occurred outside of the applicable limitations periods.

Second, the Court **GRANTS IN PART** Ocwen's motion and **DISMISSES WITH PREJUDICE**[20] the plaintiffs' negligence and unreasonable-debt-collection claims. As the tables show above, the Court **DENIES IN PART** Ocwen's motion to dismiss and allows Condarco's, Rodriguez's, Meis's, and Hickman's TDCA claims to proceed[21] and **GRANTS IN PART** Ocwen's motion and **DISMISSES WITH PREJUDICE**[22] the rest of the plaintiffs' TDCA claims.[23] Finally, the Court **GRANTS IN PART** Ocwen's motion and **DISMISSES WITH PREJUDICE**[24] Hickman's and Villalobos's TCPA claims insofar as they depend on calls to their home phone numbers.

Only the following claims remain live: the plaintiffs TCPA claims as pleaded except for Hickman's and Villalobos's TCPA claims insofar as they depend on alleged calls to home phones and the TDCA claims of Condarco, Meis, Rodriguez, and Hickman as limited by the applicable two-year statute of limitations.[25]

---

[18] *See supra* Table 2.

[19] Each of the plaintiffs has repleaded his or her complaint at least once in response to Ocwen's first round of motions to dismiss, in which Ocwen attacked the plaintiffs' complaints in the same ways it does now. Doc. 11, Mot. to Dismiss. Repleading failed to resolve the defects that doom many of the plaintiffs' claims. Dismissal is thus with prejudice

[20] *See supra* note 19.

[21] *See supra* Table 4.

[22] *See supra* note 19.

[23] *See supra* Table 3.

[24] *See supra* note 19.

[25] *See supra* Table 4.

SO ORDERED.

SIGNED: February 20, 2018.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE